IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN H. TOMLINSON and LINDA TOMLINSON, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:20-cv-3198-E-BN |
| DALLAS AREA RAPID TRANSIT, ET AL., | § § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
<u>**UNITED STATES MAGISTRATE JUDGE**</u>

Plaintiffs John H. Tomlinson and Linda Tomlinson bring this *pro se* civil rights action against Defendant Dallas Area Rapid Transit (DART) and two DART police officers in their individual and official capacities. *See* Dkt. No. 3. Broadly, the Tomlinsons allege, through an amended complaint, that Mr. Tomlinson's October 21, 2018 arrest outside DART police headquarters violated his constitutional rights protected by the First, Fourth, Fifth, and Fourteenth Amendments. *See* Dkt. No. 7.

United States District Judge Ada Brown referred their lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

Defendants DART, Officer Ronald Lindsay, and Officer Shamika Sorrells answered the amended complaint. *See* Dkt. Nos. 15, 17, 19. In doing so, Lindsay and Sorrells asserted qualified immunity as an affirmative defense. *See* Dkt. No. 17 at 8; Dkt. No. 19 at 7-8. Lindsay and Sorrells then filed a joint motion for summary

judgment on this affirmative defense. *See* Dkt. Nos. 27-29.

In response, the Court entered an order on March 2, 2021 allowing the Tomlinsons an opportunity to move for leave to conduct limited discovery in order to respond to the qualified immunity issues raised in the summary judgment motion by April 1, 2021. *See* Dkt. No. 30 (further noting that "[t]he Tomlinsons are not otherwise required to file a response to the motion for summary judgment at this time" and that "[t]he Court will enter further orders after the deadline to respond to the motion for leave to conduct limited discovery or the Tomlinsons advise the Court that, in their view, no discovery is necessary – either expressly, through a written advisory, or implicitly, by failing to move for leave").

On April 2, 2021, instead of directly responding to the discovery issue, the Tomlinsons appeared to file a substantive response to the summary judgment motion. *See* Dkt. No. 33. Regardless, given their *pro se* status, the Court elected to construe this filing as the Tomlinsons' advising the Court that, in their view, no discovery is necessary. The Court therefore ordered the Tomlinsons to respond to the summary judgment motion by May 6, 2021. *See* Dkt. No. 34.

The Tomlinsons then moved for leave to file their motion for leave to conduct limited discovery out of time, a filing that also included their substantive discovery requests. *See* Dkt. No. 35. And the Court granted their motion to file the motion for leave out of time but denied their substantive motion for leave. *See Tomlinson v. Dall. Area Rapid Transit*, No. 3:20-cv-3198-E-BN, 2021 WL 1541601 (N.D. Tex. Apr. 19, 2021) [Dkt. No. 36].

The Court next twice extended, at their requests, the Tomlinsons' deadline to file a response, by 30 days, and then by 3 days. *See* Dkt. Nos. 37, 38, 40, 41. Although no response was filed, Lindsay and Sorrells filed a reply brief on June 25, 2021. *See* Dkt. No. 42.

And the undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion for summary judgment and dismiss the Tomlinsons' claims against Lindsay and Sorrells in their individual capacities.

## Legal Standards

"A plaintiff makes out a [42 U.S.C.] § 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law,'" *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008); brackets omitted).

"But government officials performing discretionary duties" can respond to such a claim by asserting qualified immunity. *Id.* at 294 (citing *Haverda v. Hays Cnty.*, 723 F.3d 586, 598 (5th Cir. 2013)).

If they do, a court must consider each official's actions separately, *see Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007), on an expedited basis, *see Ramirez v. Guadarrama*, ___ F.4th ___, No. 20-10055, 2021 WL 2637199, at *2 (5th Cir. Feb. 8, 2021) (per curiam) ("Because qualified immunity is an *immunity from suit*, not merely a defense to liability, 'it is effectively lost if a case is erroneously permitted to go to

- 3 -

trial.' It is for this reason that a denial of qualified immunity is immediately appealable and that a defendant's entitlement to qualified immunity should be determined at the earliest possible stage of the litigation. This scheme prevents a defendant entitled to immunity from being compelled to bear the costs of discovery and other pre-trial burdens." (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); citations omitted)).[1]

> [T]he doctrine of qualified immunity attempts to balance two competing societal interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." These interests are distilled into a legal standard, an affirmative defense, that shields public officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), then *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Phrased differently, this immunity "attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)).

The doctrine therefore "gives government officials breathing room to make

---

[1] *See also Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) ("[B]ecause qualified immunity is 'not simply immunity from monetary liability' but also 'immunity from having to stand trial,' there is an interest in qualified immunity entering a lawsuit 'at the earliest possible stage of litigation.'" (quoting *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (quoting, in turn, *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989)))).

reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); internal quotation marks omitted); *accord City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015). "'Accordingly, "qualified immunity represents the norm," and courts should deny a defendant immunity only in rare circumstances.'" *Angulo v. Brown*, 978 F.3d 942, 949 (5th Cir. 2020) (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting, in turn, *Harlow*, 457 U.S. at 807)); *but see, e.g., Jamison v. McClendon*, 476 F. Supp. 3d 386 (S.D. Miss. 2020) (calling for reconsideration of the doctrine).

The "qualified-immunity inquiry is two-pronged." *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020) (citing *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020)).

- Do "the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right"? *Id.* at 190-91 (citing *Garcia*, 957 F.3d at 600)
- Was "the right" "'clearly established'"? *Id.* at 191 (citing *Garcia*, 957 F.3d at 600).

"In order for a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Ramirez*, 2021 WL 2637199, at *2 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The reasonableness of the official's conduct and the degree to which the particular right in question was clearly established are thus merged into one issue for purposes of the qualified immunity analysis." *Id.*; *cf. Nerio*

*v. Evans*, 974 F.3d 571, 575 (5th Cir. 2020) ("Fair notice requires clearly established law. That is, the law must 'clearly prohibit the officer's conduct in the particular circumstances before him' so 'every reasonable official' knows not to engage in that conduct." (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018); citing *al-Kidd*, 563 U.S. at 742)).

Under this standard, "'[q]ualified immunity is justified unless no reasonable officer could have acted as [the defendant officers] did here, or every reasonable officer faced with the same facts would not have [acted as the defendant officers did].'" *Tucker v. City of Shreveport*, 998 F.3d 165, 174 (5th Cir. 2021) (quoting *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019) (citing, in turn, *Wesby*, 138 S. Ct. at 590 ("It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that 'every reasonable official' would know."))).

A court may "'analyze the prongs in either order or resolve the case on a single prong.'" *Cunningham*, 983 F.3d at 191 (quoting *Garcia*, 957 F.3d at 600). But addressing this affirmative defense on a motion for summary judgment is not exactly intuitive.

"A plaintiff suing for a constitutional violation has the ultimate burden to show that the defendant violated a constitutional right … whether or not qualified immunity is involved." *Joseph*, 981 F.3d at 329 (footnote omitted).

But, "[w]hen a public official makes 'a good-faith assertion of qualified

immunity,' that 'alters the usual summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available.'" *Id.* at 329-30 (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016)); *accord Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021) ("The defense of qualified immunity 'alters the usual summary judgment burden of proof.' Once a defendant properly raises the defense, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to the defense's protection." (citations omitted)). "In other words, to shift the burden to the plaintiff, the public official need not show (as other summary-judgment movants must) an absence of genuine disputes of material fact and entitlement to judgment as a matter of law." *Joseph*, 981 F.3d at 330 (citing *King v. Handorf*, 821 F.3d 650, 653-54 (5th Cir. 2016)).

Once shifted, "the plaintiff bears the burden of demonstrating that a defendant is not entitled to qualified immunity." *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019) (per curiam) (citation omitted). And, "[t]o rebut [a public official's] qualified immunity defense, a plaintiff must point to summary judgment evidence '(1) that [the official] violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was 'clearly established at the time.'" *Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021) (cleaned up).

As to the first prong of the qualified-immunity inquiry, to overcome a public official's motion for summary judgment on qualified immunity, the plaintiff "must show that there is a genuine dispute of material fact and that a jury could return a verdict entitling the plaintiff to relief for a constitutional injury" – just as would be

required "if the plaintiff did not face qualified immunity." *Joseph*, 981 F.3d at 330. That is, the plaintiff must defeat summary judgment by showing that "the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right," *Cunningham*, 983 F.3d at 190-91.

When considering this showing, the Court must "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). But the Court need not do so if the plaintiff's "version 'is blatantly contradicted by the record, so that no reasonable jury could believe it.'" *Joseph*, 981 F.3d at 325 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007); citing *Orr*, 844 F.3d at 590).

When accepting the plaintiff's well-supported version of the disputed facts, the Court must "view the facts and draw reasonable inferences in the light most favorable to" the plaintiff. *Id.* (footnote omitted). And, particularly applicable in *pro se* cases, "verified complaint[s] and other verified pleadings serve as competent summary judgment evidence." *Falon v. Holly*, 480 F. App'x 325, 326 (5th Cir. 2012) (per curiam) (citing *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003)); *see, e.g.*, *Mitchell v. Cervantes*, 453 F. App'x 475, 477-78 (5th Cir. 2011) (per curiam).

But "the plaintiff's version of those disputed facts must also constitute a violation of clearly established law." *Joseph*, 981 F.3d at 330. So, "when qualified immunity is involved, at least in this circuit, a plaintiff has the additional burden to show that the violated right was 'clearly established' at the time of the alleged violation." *Id.* at 329 (footnote omitted).

And "[t]he 'clearly established' prong is difficult to satisfy." *Cunningham*, 983 F.3d at 191. The plaintiff "must show that the law was 'sufficiently clear' at that time 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *Batyukova*, 994 F.3d at 726 (quoting *Mullenix*, 577 U.S. at 11).

"There are two ways to demonstrate clearly established law" and meet this additional burden to make this second showing. *Id.*

The first approach "requires the plaintiff to 'identify a case' – usually, a 'body of relevant case law' – in which 'an officer acting under similar circumstances ... was held to have violated the [Constitution]," *Joseph*, 981 F.3d at at 330 (footnote omitted); *accord Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020) (A clearly established right must be supported by "'controlling authority – or a "robust consensus of [cases of] persuasive authority" – that defines the contours of the right in question with a high degree of particularity.'" (quoting *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011))); *see also Lincoln v. Turner*, 874 F.3d 833, 850 (5th Cir. 2017) ("While we may look to other circuits to find clearly established law, we must consider 'the overall weight' of such authority. A 'trend' alone is just that. As of December 2013, only two circuits had weighed in on the 'contours of the right.' These cases alone do not provide sufficient authority to find that the law was clearly established." (footnote omitted)).

"It is the plaintiff's burden to find a case in [her] favor that does not define the law at a 'high level of generality.'" *Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (cleaned up; quoting *Vann v. City of Southaven*, 884 F.3d 307,

310 (5th Cir. 2018) (quoting, in turn, *Cass v. City of Abilene*, 814 F.3d 721, 733 (5th Cir. 2016))). Thus, the "clearly established law" "must be 'particularized' to the facts of the case." *Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021) (cleaned up; quoting *White*, 137 S. Ct. at 552 (quoting, in turn, *al–Kidd*, 563 U.S. at 742)). And a clearly established right must be defined "'with specificity.'" *Cunningham*, 983 F.3d at 191 (quoting *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam)).

"This rule is a 'demanding standard.'" *Id.* (quoting *Wesby*, 138 S. Ct. at 589). And "'[a]bstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case.'" *Nerio*, 974 F.3d at 575 (quoting *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)).

"While there need not be 'a case directly on point,' the unlawfulness of the challenged conduct must be 'beyond debate.'" *Joseph*, 981 F.3d at 330 (footnotes omitted); *accord Tucker*, 998 F.3d at 173-74 ("For conduct to be objectively unreasonable in light of clearly established law, there need not be a case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" (quoting *White*, 137 S. Ct. at 551 (internal quotation marks omitted); citing *Mullenix*, 577 U.S. at 14)).

"'The central concept is that of "fair warning": The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable

warning that the conduct then at issue violated constitutional rights.''" *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (quoting *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013) (quoting, in turn, *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc))).

"In other words, 'there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful.'" *Cunningham*, 983 F.3d at 191 (quoting *Vincent*, 805 F.3d at 547).

Under the second approach to demonstrating clearly established law, a plaintiff asks the Court to look to "the 'rare' possibility that, in an 'obvious case,' analogous case law 'is not needed' because 'the unlawfulness of the [challenged] conduct is sufficiently clear even though existing precedent does not address similar circumstances.'" *Joseph*, 981 F.3d at 330 (quoting *Wesby*, 138 S. Ct. at 590); *accord Batyukova*, 994 F.3d at 726. So, "in an obvious case, general standards can 'clearly establish' the answer, even without a body of relevant case law." *Roque*, 993 F.3d at 335 (cleaned up; quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). But "[t]he standard for obviousness is sky high." *Joseph*, 981 F.3d at 338.

### Analysis

To begin, the Tomlinsons offer no summary judgment evidence of their own in support of their version of the facts. The operative complaint [Dkt. No. 7] is not verified. Their April 2 filing [Dkt. No. 33] – insofar as it may be liberally construed as substantively responding to the summary judgment motion – attaches no evidence. And they have not otherwise responded to the motion for summary judgment.

The only evidence before the Court was submitted by Lindsay and Sorrells. *See* Dkt. No. 29. But the Tomlinsons do cite portions of this evidence in their April 2 filing: Dkt. No. 29-1 (Sorrells's affidavit); Dkt. No. 29-3 (photos obtained from video and made exhibits to her affidavit); and Dkt. No. 29-5 (Lindsay's affidavit). *See* Dkt. No. 33 at 5-6. And, using this evidence in part, the Tomlinsons assert:

> 8. On 10/21/18, Plaintiff John Tomlinson, at that time 76- years of age, with several physical maladies, was observed by both SORRELL and LINDSEY sporting his camera gear and taking pictures and videos in and of the exterior public areas of the DART Police headquarters and train station, Dkt. #7, ¶¶ 16,17, Dkt. #29-5 ¶¶6,7, and Dkt. 29-1 ¶3.
> 9. Despite engaging in this constitutionally protected conduct, filming in public and filming public officials, Turner v. Driver, 848 F. 3d 678 (5th Cir. 2017), SORRELL approached TOMLINSON and initiated contact at the end of the parking lot, Dkt. 7, ¶¶17-19, Dkt. #29-5 ¶8.
> 10. While TOMLINSON remained stationary with one hand holding his camera gear within inches of his chest and near his face and his other hand in his pocket, SORRELL demanded he identify himself to her and asked if he needed help. TOMLINSON denied any need for assistance and refused to identify himself. He did, however, ask SORRELL to provide her name and badge number.
> 11. SORRELL moved ever closer to TOMLINSON while he remained stationary and posing no threat, until she made physical contact with and obstruction of his camera equipment, Dkt. #29-3 ¶¶1-25 (photos). LINDSEY was all the while approaching TOMLINSON from behind.
> 12. SORREL after pushing and obstructing TOMLINSON's equipment, falsely claims that her hand was hit. It is at this point TOMLINSON was assaulted and battered by the officers and brought to the ground. Despite reporting that he could not breathe LINDSEY and SORREL held their combined body weight, probably near 500 pounds, directly on his back until TOMLINSON went unconscious.
> 13. After regaining consciousness and the appearance of other officers, TOMLINSON was arrested, transported to jail, and charged by these defendant officers. All charges were dropped.

*Id.*

First, not all these assertions – in particular those that could allege excessive force, ¶¶ 12, 13 – are linked to summary judgment evidence. Those versions of the

facts may not therefore be accepted as true at this stage. *See Haggerty*, 391 F.3d at 655.

As to those assertions that are linked to Defendants' evidence, the evidence cited does not correspond exactly to what the Tomlinsons assert. That is, the evidence provides a fuller version of the events that transpired that day. And the version of events supported by the cited evidence does not allow the Court to find that the Tomlinsons have shown "that there is a genuine dispute of material fact and that a jury could return a verdict entitling [them] to relief for a constitutional injury." *Joseph*, 981 F.3d at 330.[2] *Compare* Dkt. No. 33 at 5, ¶ 8 (asserting that Mr. Tomlinson was "taking pictures and videos in and of the exterior public areas of the DART Police headquarters and train station" (citing Dkt. No. 29-1, ¶ 3), *with* Dkt. No. 29-1, ¶ 3 ("On Sunday, October 21, 2018 I was in full distinct DART Police uniform, operating a marked DART Police squad vehicle and was in the course and scope of my employment with DART as a DART Police Officer. At approximately 2:34 p.m. I arrived at DART Police Headquarters parking lot located at 2111 S. Corinth Street, Dallas, Texas after clearing a special event at the DART MLK Station. Upon arrival, I observed a suspicious white male, later identified as John Tomlinson, walking the north parking lot, wearing a medical face mask, dark shades, and a toboggan hat. The unknown male appeared to use a camera or video recording device that was

---

[2] *See also Angulo*, 978 F.3d at 949 ("[T]o avoid summary judgment, [a plaintiff] must show that – viewing the evidence in the light most favorable to his claims and resolving factual disputes in his favor – he has put forth enough evidence that a jury could rationally find that [his protected rights were violated].").

strapped to his body to record the interior contents of vehicles in the lot as well as recording the front and rear license plate of each vehicle. Upon entering the parking lot located on the North side of DART Police Headquarters I observed John Tomlinson begin to record my personal vehicle's front license plate, the inside contents of my vehicle, followed by the rear license plates. I parked my DART police vehicle next to the vehicle that Tomlinson was recording, and he began to walk away. At the time, I considered Tomlinson suspicious because of his appearance and behavior in the parking lot.").[3]

---

[3] *See also* Dkt. No. 29-5, ¶¶ 6, 7, 8 (also cited to support the assertion that Mr. Tomlinson was merely "filming in public and filming public officials," in which Officer Lindsay testified: "On Sunday, October 21, 2018, I was in the course and scope of my employment with DART as a DART Police Corporal in a marked police vehicle at the Illinois Transit Center parking lot, which is adjacent to the DART Police Headquarters. At or around 2:00 p.m. I observed an unknown male subject, wearing a medical face mask, dark sunshades and a winter hat, walking alone around the DART Police headquarters building for several minutes using a recording device filming the exterior doors and the inside of the east entrance area. The headquarters is closed to the public on Sunday. I followed the subject at a distance, due to past events targeting police stations such as DPD Patrol divisions. I did not make any contact with the subject as he filmed. I wanted to make the subject aware that I was observing him. I observed the subject walk away from the headquarters building over to the Illinois Transit Center station and begin filming the train platform and the waiting area. I was parked in the west side parking lot. I continued to observe the subject and saw him walk back over to the headquarters north parking lot and begin filming the vehicles in the parking lot. As the subject was filming the license plate of a parked vehicle, DART Officer Shamika Sorrells drove through the parking lot in a marked police vehicle toward where her personal vehicle was parked. The subject was standing behind Officer Sorrells's personal vehicle and was filming her license plate. I saw Officer Sorrells exit her patrol vehicle and walk in the direction of the subject. I drove toward where the subject was walking and parked my vehicle. The subject began filming me while I was sitting in my patrol vehicle. I did not stop the subject or engage in conversation with the subject. The subject turned away from me and turned toward Officer Sorrells. I drove my patrol vehicle up a short distance to where Officer Sorrells and the subject were standing near each other and I parked my vehicle. I was unable to clearly hear

In sum, the evidence that the Tomlinsons point to – to show that either Officer Sorrells or Officer Lindsay violated a constitutional right – reflects that, after Mr. Tomlinson was observed videotaping the interior of vehicles and their license plates and the exterior and inside the entrance of a DART building closed to the public that day, he was approached by one of the observing officers – who just witnessed Mr. Tomlinson record the plates on, and the interior of, her own personal vehicle – and he became hostile. This summary is further supported by the still photos from Officer Sorrells's cell phone documenting her encounter with Mr. Tomlinson [Dkt. No. 29-3], evidence that both sides point to.

Insofar as the DART property on which Mr. Tomlinson was videotaping was closed to the public that day, this fact plus the evidence discussed above would not, for example, support "[a] constitutional claim for false arrest, which … 'requires a showing of no probable cause.'" *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019) (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009)). "The [United States] Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443

---

any conversation between Officer Sorrells and the subject. I was behind the subject but from my observation, the subject appeared to become hostile towards Sorrells. For officer safety and to assist Officer Sorrells, I then exited my patrol vehicle and walked up behind the subject as he faced Officer Sorrells.").

U.S. 31, 37 (1979)).

"The facts must be known to the officer at the time of the arrest" and "must be particularized to the arrestee." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citations omitted). And a court "will find that probable cause existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense." *Id.* (citation omitted); *see also McLin v. Ard*, 866 F.3d 682, 694 (5th Cir. 2017) ("[P]robable cause is the 'sum total of layers of information and the synthesis of what police have heard, what they know, and what they observed as trained officers.'" (quoting *United States v. Shaw*, 701 F.2d 367, 376 (5th Cir. 1983) (quoting, in turn, *United States v. Edwards*, 577 F.2d 883, 895 (5th Cir. 1978) (en banc)))).

But, even if the Tomlinsons point to evidence that may show that either defendant violated a federal statutory or constitutional right, the individual defendants are entitled to summary judgment as to qualified immunity on the clearly established prong.

The Tomlinsons rely on a single, albeit controlling, case from this circuit: *Turner v. Lt. Driver*, 848 F.3d 678 (5th Cir. 2017). In *Turner*, decided on February 16, 2017, the United States Court of Appeals for the Fifth Circuit held "that First Amendment principles, controlling authority, and persuasive precedent demonstrate that a First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions." *Id.* at 688. So this generalized principle <u>may</u> have been clearly established on the day of the incident underlying this

lawsuit. *But see Nerio*, 974 F.3d at 576 n.2 ("Although we know the Supreme Court's decisions can clearly establish the law, the Supreme Court has never held that [Courts of Appeals's] decisions can do the same." (citing *Wesby*, 138 S. Ct. at 591 n.8 ("We have not yet decided what precedents – other than our own – qualify as controlling authority for purposes of qualified immunity."))). Even so, that itself does not satisfy the clearly established prong.

And, even if the videotaping that Mr. Tomlinson undertook on October 21, 2018 as reflected by the evidence that he points to amounted to recording the police, the Tomlinsons have failed to show that the general legal principle announced in *Turner* applies to this particular context. They have therefore not shown that "a right is clearly established as to the specific facts of [their] case." *Nerio*, 974 F.3d at 575; *see Cunningham*, 983 F.3d at 193 ("The district court's reliance on broad pronouncements from [prior decisions] evinces a methodological error: It defined clearly established law too generally for any controlling relevance in this case. Courts must [instead] 'frame the constitutional question with specificity and granularity.'" And "'[t]he dispositive question' … is whether 'the violative nature of particular conduct is clearly established.' The answer here is no." (quoting *Morrow v. Meachum*, 917 F.3d 870, 874-75 (5th Cir. 2019), then *Mullenix*, 577 U.S. at 12)); *see, e.g.*, *Holmes v. Reddoch*, Civ. A. No. 19-12749, 2021 WL 1063069, at *16 (E.D. La. Mar. 18, 2021) ("[W]hen one sharpens Holmes's gloss of *Turner*, the case is easily distinguishable. *Turner* held merely that 'the First Amendment protects the right to record *the police* … "engaged in their duties in a public place."' And it noted that the right 'is not without

limitations' – *i.e.*, it is 'subject to reasonable time, place, and manner restrictions.' Holmes has never alleged that he was photographing police, so his reliance on *Turner* is misplaced. More importantly, he does not identify a single case extending *Turner* to a fact pattern similar to his. Without that, he has not met his burden to show that the defendants' conduct violated clearly established law." (citing *Durant v. Gretna City*, Civ. A. No. 19-147, 2020 WL 263669, at *25 (E.D. La. Jan. 17, 2020) (no clearly established constitutional violation found where the plaintiff's conduct of videotaping the police while detained and handcuffed in the rear seat of a police vehicle was distinguishable from *Turner*); citations and footnote omitted)).

The Tomlinsons have therefore failed "[t]o rebut [either Lindsay's or Sorrells's] qualified immunity defense." *Cloud*, 993 F.3d at 383. And the Court should grant the motion for summary judgment on qualified immunity, dismissing the individual claims against Lindsay and Sorrels with prejudice.

### Recommendation

The Court should grant the motion for summary judgment on qualified immunity filed by Defendants Officer Ronald Lindsay and Officer Shamika Sorrells [Dkt. No. 27] and dismiss the individual claims against them with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 30, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE